**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **JULIA PYLANT,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| vs. § | **Civil Action No. _____** |
| § | |
| **DONALD CUBA AND** § | |
| **SOUTHERN METHODIST UNIVERSITY,** § | |
| § | |
| **Defendants.** § | |
| § | |

## NOTICE OF REMOVAL

Donald Cuba, a defendant in *Julia Pylant v. Donald Cuba and Southern Methodist University*, No. CC-14-00375-A in the Dallas County Court at Law No. 1 ("State Court Action"), hereby removes the State Court Action from the state court in which it was initiated.

The State Court Action should be removed to federal court and consolidated with Mr. Cuba's existing and prior filed action pending in the Northern District of Texas, Case No. 3:13-cv-03670-P.

### I.    The State Court Action

1.    Plaintiff's current pleading in the State Court Action is her First Amended Petition filed February 7, 2014. Therein, she asserts causes of action against Mr. Cuba for assault and battery and intentional infliction of emotional distress based on allegations that Mr. Cuba assaulted her in an SMU dormitory in February 2012 while both were students at SMU. In addition, Plaintiff contends that Southern Methodist University ("SMU") is vicariously liable for her damages because it ratified the alleged assault.

## II. The Procedural Requirements Have Been Satisfied

2. This removal is timely because 30 days have not elapsed since the date Defendants were served. Mr. Cuba and SMU were served with Plaintiff's First Amended Petition on February 11, 2014 and February 13, 2014, respectively. Consequently, Mr. Cuba is removing this case well within the 30-day deadline established by 28 U.S.C. § 1446(b). Indeed, he is removing this case within 30 days of the January 27, 2014 filing of Plaintiff's original petition (which was never served on either Defendant).

3. Removal to this Court is proper under 28 U.S.C. § 1441(a) because this is the district and division embracing the County Court at Law No. 1.

4. Mr. Cuba has given prompt notice of this removal to the state court by filing a copy of this Notice of Removal with the clerk of the County Court at Law No. 1 of Dallas County, as required by 28 U.S.C. § 1446(d).

5. SMU has consented to this removal petition as reflected in **Exhibit A** to this Notice of Removal.

6. An index of all documents filed in the state court, a copy of the state court docket sheet, a copy of each document filed in the state court action (except answered discovery material), and a copy of the certificate of interested parties are being filed as **Exhibits B and C** to this notice.

## III. Jurisdiction

**A. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.**

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, excluding interest and costs, and complete diversity of citizenship exists between the properly joined parties.

8. The amount in controversy exceeds $75,000, exclusive of interest and costs, because Plaintiff's First Amended Petition states on its face that she seeks monetary relief in excess of $1,000,000.00. Pl.'s First Am. Pet. ¶ 2.

9. Complete diversity of citizenship exists between the properly joined parties because Plaintiff is a citizen of Texas and Mr. Cuba is a citizen of Illinois[1]. Mr. Cuba is a citizen of Illinois because that is where he maintains his domicile. Although Mr. Cuba temporarily resides in Texas while attending school at SMU, he does not intend to reside there permanently. In fact, his permanent residence is in Illinois. He pays income taxes to the State of Illinois, his driver's license is issued by the State of Illinois, his voter registration is in Illinois, and his health insurance is in Illinois. The car he drives is registered in Illinois and has Illinois plates and a LaGrange Park, Illinois city sticker. His auto insurance is in Illinois and bank account is also in Illinois.

10. Although SMU is a citizen of Texas, its citizenship must be disregarded for purposes of determining diversity because SMU has been improperly or "fraudulently" joined in this action solely to defeat federal jurisdiction. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 575 (5th Cir. 2004) (en banc); *Moore v. Goodyear Tire & Rubber Co.*, 2010 WL 3167583, at *3 (N.D. Tex. Aug. 10, 2010). A removing party can satisfy the diversity of citizenship requirement by showing that a non-diverse defendant was not properly joined. *See, e.g.*, *Moore*, 2010 WL 3167583, at *3.

11. To establish improper joinder, a removing party must prove: (1) actual fraud in a plaintiff's pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant in state court. *See Smallwood*, 385 F.3d at 573; *Moore*, 2010 WL 3167583, at *3. Mr. Cuba contends that the second test is clearly met because

---

[1] Pylant asserts Cuba is a resident of Illinois in the State Court Action.

Plaintiff has no reasonable possibility of recovery against SMU in state court. *See Smallwood*, 385 F.3d at 573 ("[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant . . . .") Put another way, there is no reasonable basis for this court to predict that [Plaintiff] might be able to recover against [SMU]." *Id.*

12. Plaintiff does not allege any cause of action against SMU, or even assert any prayer for relief as against SMU. Rather, she alleges only that SMU is vicariously liable for her alleged damages because SMU "ratified" Mr. Cuba's alleged assault. Pl.'s First Am. Pet. ¶¶ 31, 37. According to Plaintiff, SMU "ratified" the alleged assault "because it knew of at least one prior attack on a student by Mr. Cuba, had reason to believe that Cuba's acts would continue if no corrective action was taken by SMU, did nothing to warn Pylant or otherwise prevent the unlawful attack, and chose to retain Cuba as a student at SMU after the prior assault." *Id.* ¶ 37.

13. Even if the facts alleged by Plaintiff against SMU were true, those facts would not constitute ratification as a matter of law. Ratification is an agency concept. It is "the affirmance by a person of a prior act which, when performed, did not bind him, but which was done or professedly done on his account . . . ." *Disney Enters., Inc. v. Espirit Fin., Inc.*, 981 S.W.2d 25, 31 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.); Restatement (Second) of Agency § 84. To prevail on her so-called ratification theory, Plaintiff must allege and prove that:

(1) Mr. Cuba committed the assault on SMU's behalf (or that SMU received some benefit from it);

(2) SMU approved of the assault by word, act, or conduct after acquiring knowledge of it; and

(3) SMU gave its approval with the intent of giving validity to Mr. Cuba's actions.

*See, e.g.*, *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 536-37 (Tex. 2002); Restatement (Second) of Agency §§ 83-84.

14. Needless to say, Plaintiff does not allege and certainly cannot prove that Mr. Cuba was acting or purporting to act on SMU's behalf during the alleged assault or that SMU said or did anything after the fact that could be construed as approving of the assault. Indeed, as the Fifth Circuit pointed out in *Chaney v. Frigidaire Corp.*, "it seems extravagant to suggest that [an entity], by *any action* it might take, could ratify or adopt [an assault]." 31 F.2d 977, 978 (5th Cir. 1929) (emphasis added) (affirming dismissal, for no cause of action, customer's lawsuit against an employer based on the theory that employer ratified its employee's assault on plaintiff by failing to discharge the employee). It is especially extravagant in this case given that Mr. Cuba was a *student* of SMU, not an employee. Plaintiff surely does not contend that SMU's students are somehow agents of the university that act on behalf of SMU when they allegedly commit torts. Although an entity can sometimes ratify the acts of a nonagent, it can do so only by retaining some benefit from the allegedly ratified act. Here, there is no reasonable possibility for this Court to predict that SMU somehow derived and retained some benefit from Mr. Cuba's alleged assault on Plaintiff.

15. The facts in *Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456, 480-81 (Tex. App.—Austin 2000, pet. denied), which Plaintiff cites in support of her "ratification" theory, illustrate Plaintiff's gross misapplication of the doctrine. In *Itz*, the appellate court upheld the jury's finding on ratification where the evidence showed that the defendant knew of and failed to do anything about sexual assault perpetrated *by one of defendant's employees*. *See id.* at 481. Unlike the perpetrator in *Itz*, Mr. Cuba was not an SMU employee, and, consequently, there is no reasonable possibility that he committed the alleged assault on behalf of SMU or that SMU derived any benefit from the assault, a required element of ratification. *See* Restatement (Second) of Agency § 84. Furthermore, the evidence in *Itz* showed that the defendant knew

about and failed to address the sexual assault committed *against the plaintiff*. *See Itz*, 21 S.W.3d at 480-81. Plaintiff's analogy to *Itz* might be apropos had she alleged that SMU knew of and did nothing to address Mr. Cuba's alleged assault on *her*, but that is not what she alleges. Rather, she alleges that SMU ratified the alleged assault by failing to do anything about some prior assault Mr. Cuba allegedly committed against someone else. That is not ratification as a matter of law.

16. To sum up, there is no reasonable possibility that Plaintiff can establish liability against SMU under Texas law. The facts alleged by Plaintiff simply do not constitute a ratification, and it is indeed "extravagant" o suggest that SMU could ever ratify an alleged sexual assault committed by one of its students. *See Chaney*, 31 F.2d at 978. To properly join SMU in this lawsuit, "[t]here must be a *reasonable* possibility of recovery, not merely a theoretical one." *See Moore*, 2010 WL 3167583 (quoting *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007)). Because "there is no reasonable basis for [this] court to predict that [Plaintiff] might be able to recover against [SMU]," SMU is improperly joined, and its citizenship must be disregarded for the purposes of establishing diversity. *See Smallwood*, 385 F.3d at 573; *Moore*, 2010 WL 3167583, at *3-*6.

**B.     Plaintiff's claims constitute compulsory counterclaims in Mr. Cuba's already-pending federal lawsuit against Plaintiff and her parents.**

17. After removal, this case should be assigned to Judge Solis and consolidated with *No. 3:13-cv-03670-P,* Mr. Cuba's already pending lawsuit against Plaintiff and her parents. Indeed, Plaintiff's claims in the State Court Action are compulsory counterclaims to Mr. Cuba's lawsuit under Rule 13(a) of the Federal Rules of Civil Procedure.

18. Federal Rule of Civil Procedure 13(a) provides: "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing

party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."

19.     The claims asserted by Plaintiff in the state court suit arise out of the occurrence that is the subject matter of the claims asserted by Mr. Cuba in the prior pending federal suit. Both arise out of the parties' sexual encounter on the night of February 10, 2012.  Mr. Cuba alleges that the encounter was consensual and that Plaintiff and her parents thereafter engaged in a malicious and deliberate campaign of defamation and harassment against him including subjecting him to criminal prosecution and attempting to have him expelled from SMU.  Plaintiff alleges that the encounter was non-consensual – a claim which already has been rejected by three separate SMU tribunals and a Texas jury.

20.     Rule 13 was amended in 1946 specifically to insure "against an undesirable possibility presented under the original rule whereby a party having a claim which would be the subject of a compulsory counterclaim could avoid stating it as such by bringing an independent action in another court after the commencement of the federal action but before serving his pleading in the federal action." *See* FRCP 13, Notes of Advisory Committee on Rules – 1946 Amendment.  This is precisely what Plaintiff is attempting by filing her claim in state court during the pendency of her motion to dismiss and thus before the filing of her answer to the pending federal suit.  It is also evident that she is attempting to circumvent the Texas statute she relies on to seek dismissal by filing with her state suit voluminous and improper discovery requests, in addition to using the state suit as a basis for harassing third parties with over-reaching discovery subpoenas.

21. One commentator noted, "Still, the rationale for Rule 13(a) is clear—when the same issues and facts are material to both party's [sic] claims, litigating the claims in a single lawsuit rather than separate lawsuits will economize on the cost of litigation because the same evidence does not have to be presented twice." William M. Landes, Counterclaims: An Economic Analysis, 14 INT'L REV. L. & ECON. 235, 236 (1994) The Supreme Court has stated:

> [the] requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which the counterclaim became the basis of the complaint.

*S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962) (per curiam).

22. The policy behind the compulsory counterclaim rule is "to enable the court to settle all related claims in one action, thereby avoiding a wasteful multiplicity of litigation on claims arising from a single transaction or occurrence.'" 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1409, at 37 (3d ed. 2001); *see Also, U.S. Gen., Inc. v. City of Joliet*, 598 F.2d 1050, 1054 (7th Cir. 1979) ("One of the virtues of the compulsory counterclaim provision is to prevent fragmentation of litigation and multiplicity of suits."); *Montecatini Edison, S.P.A. v. Ziegler*, 486 F.2d 1279, 1282 (D.C. Cir. 1973) (noting that the objective of the federal compulsory counterclaim rule is "to provide complete relief to the parties, to conserve judicial resources and to avoid the proliferation of lawsuits"); *Local Union No. 11, Int'l Bd. of Elec. Workers v. G. P. Thompson Elec., Inc.*, 363 F.2d 181, 184 (9th Cir. 1966); *Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960). The Fifth Circuit has added that the compulsory counterclaim

rule is also meant "to provide complete relief to the defendant who has been brought involuntarily into the federal court." *Plant v. Blazer Fin. Servs.*, 598 F.2d 1357, 1364 (5th Cir. 1979) (citing *Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir. 1970)). Professor Wright has noted that the rule's limitation on the defendant's claim autonomy is perfectly appropriate given that "there is an important public interest in efficient conduct of the courts, and in adjudications on the merits rather than on the cleverness of counsel." Charles Alan Wright, Estoppel by Rule: The Compulsory Counterclaim Under Modern Pleading, 38 MINN. L. REV. 423, 455 (1954).

### IV. Request

For the above reasons, Donald Cuba asks the Court to remove the state court action to the Northern District of Texas.

Respectfully submitted,

**/S/ MICHAEL P. KELLY**
Michael P. Kelly
State Bar No. 11227280
Attorney & Counselor at Law
P.O. BOX 150589
Dallas, Texas 75315
(214) 821-7255
(214) 821-7251 (Telecopier)
mptkelly@sbcglobal.net

**COUNSEL FOR DONALD CUBA**

## CERTIFICATE OF SERVICE

    I certify that on February 26, 2014, I sent this document via certified mail, return receipt requested, to the following counsel of record at the address shown below:

| | |
|---|---|
| Jeffrey W. Hellberg<br>Wick Phillips Gould & Martin LLP<br>2100 Ross Avenue, Suite 950<br>Dallas, Texas 75201<br>jhellberg@wickphillips.com | Taylor Brinkman<br>Locke Lord LLP<br>2200 Ross Avenue, Suite 2200<br>Dallas, Texas 75201<br>tbrinkman@lockelord.com |
| *Counsel for Julia Pylant* | *Counsel for SMU* |

                                                **/S/   MICHAEL P. KELLY**